*original filed 3/30/07

1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | | |
|---|---|---|
| TONDARLAIRD CURTIS | ) | No. C 05-4444 JF (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ) ) ) | |
| THOMAS L. CAREY | ) ) | |
| Respondent. | ) ) ) | |

17
18
19
20
21
22
23
24

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his

conviction, pursuant to a plea of nolo contendere for lewd or lascivious acts committed on a

child under fourteen (Cal. Penal Code § 288(a)) and inflicting corporal injury on a spouse or co-

habitant (Cal. Penal Code § 273.5). The Court found that the petition stated two cognizable

claims and ordered Respondent to show cause why the petition should not be granted.[1]

Respondent filed an answer addressing the merits of the petition. Although given an opportunity

to do so, Petitioner did not file a traverse. After reviewing the papers and the underlying record,

25
26
27
28

[1] The Court dismissed Petitioner's claim that the prosecutor's theory of prosecution relied upon the testimony of Petitioner's wife and her daughter, which resulted in a miscarriage of justice because the testimony constituted perjury. Under California law, a nolo contendere plea removes every issue of fact from the case and authorizes the entry of a conviction. Therefore, a defendant who pleads guilty or nolo contendere cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before entry of the plea.

1    the Court concludes that Petitioner is not entitled to habeas corpus relief and will deny the

2    petition.

3    # I. BACKGROUND[2]

4    On or about and between January 25, 2003 and January 26, 2003, the
defendant, who is 13-year old Jane Doe's stepfather, entered Jane Doe's bedroom
5    while she was asleep. He sat on the edge of the bed, slipped his hand underneath
her underwear and touched her vagina, skin to skin. When the victim woke up,
6    the defendant removed his hand and left the room without saying anything. She
then went to her mother and reported the incident, although she believed her
7    mother was too asleep to understand what she was saying. The next morning, the
victim again told her mother about the incident, at which time her mother, along
8    with the victim, confronted the defendant. The defendant admitted the incident
and promised he would never do it again. The police were not called at that time.

9

10   On an evening approximately two weeks prior to the above incident, the
defendant gave Jane Doe a twenty dollar bill and told her it was for her personal
11   use. He then asked her to pull down her pants and show him her "thing,"
referring to her vaginal/genital area. Jane Doe refused the request and ran away
12   from him.

13   On February 18, 2003, a domestic violence incident occurred at 1330
Foxdale Loop #328 in San Jose. The defendant and the victim had been married
14   for approximately five years. The victim and the defendant engaged in a verbal
argument that turned physical when the defendant placed the victim in a headlock,
15   twisted her wrist and ring finger, causing her finger to swell. The victim broke
free from the defendant and tried to run upstairs; the defendant grabbed her and
16   pulled her back down the stairs.

17   The defendant threw the victim on her back, straddled her, and reached
down with both hands and strangled her. The victim tried to scream but could not
18   breathe. The victim's youngest daughter saw the incident and screamed. At this
time, the defendant released his grip and left the apartment building. The police
19   were called.

20   The victim's 13-year old daughter, Jane Doe, told officers the defendant is
always physically and verbally abusing her mother. Jane Doe told the officer that
21   the defendant has hit her mother several times in the past. While Jane Doe was
talking to the police about the domestic violence incident, she reported that the
22   defendant had sexually assaulted her.

23   The victim's 11-year old daughter (Latoya) also told police she had
witnessed other incidents of physical abuse by the defendant against her mother.
24   Latoya told officers that on one occasion she remembered seeing her mother with
a black eye, several bruises, and barely able to walk. Latoya told the police the
25   defendant had never abused her.

26   After the defendant's arrest, the District Attorney's office received
documented telephone conversations between the defendant and the domestic

27   _____

28   [2] The relevant facts are taken from the Pre-Sentence Probation Report (Respondent's
Answer, Exh. 3) at 3-4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

violence victim in this matter.  The defendant attempted to dissuade his wife from testifying in court, or cooperating with the police.

On January 9, 2004, Petitioner entered a plea of <u>nolo</u> <u>contendere</u> to lewd or lascivious acts committed on a child under fourteen (Cal. Penal Code § 288(a)) and inflicting corporal injury on a spouse or co-habitant (Cal. Penal Code § 273.5).  Petitioner was sentenced to a prison term of three years on count one and a concurrent term of two years on count two.  Petitioner filed two state habeas petitions in Santa Clara Superior Court, which were denied in written orders dated October 6, 2004 and April 18, 2005.  Petitioner filed a state habeas petition in the state appellate court, which was summarily denied on June 2, 2005.  Petitioner filed a state habeas petition in the state supreme court, which was summarily denied on August 10, 2005.  Petitioner filed the instant federal petition seeking habeas relief on November 1, 2005.

## II.  DISCUSSION

### A.    Standard of Review

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 412-413 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

1    applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court

2    may not issue the writ simply because that court concludes in its independent judgment that the

3    relevant state-court decision applied clearly established federal law erroneously or incorrectly.

4    Rather, that application must also be unreasonable." Id. at 411.

5        "[A] federal habeas court making the 'unreasonable application' inquiry should ask

6    whether the state court's application of clearly established federal law was 'objectively

7    unreasonable.'" Id. at 409. In examining whether the state court decision was objectively

8    unreasonable, the inquiry may require analysis of the state court's method as well as its result.

9    Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively

10   unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss

11   of error fails to give proper deference to state courts by conflating error (even clear error) with

12   unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

13       A federal habeas court may grant the writ if it concludes that the state court's

14   adjudication of the claim "results in a decision that was based on an unreasonable determination

15   of the facts in light of the evidence presented in the State court proceeding." 28. U.S. C. §

16   2254(d)(2). The court must presume correct any determination of a factual issue made by a state

17   court unless the petitioner rebuts the presumption of correctness by clear and convincing

18   evidence. 28. U.S.C. § 2254(e)(1).

19   **B.    Petitioner's Claims**

20       1.    Ineffective Assistance of Counsel

21       Petitioner claims that his trial counsel was ineffective because trial counsel "fail[ed] to

22   prepare adequate witness(es), alibi, or evidence(s) supporting Defense Counsel's tactical

23   defense" with respect to the two cases. Petition at 15.

24       A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

25   Amendment right to counsel, which guarantees not only the assistance of counsel, but that the

26   assistance be effective. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark

27   for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

28   proper functioning of the adversarial process that the trial cannot be relied upon as having

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Curtis444den                4

1    produced a just result.  Id.

2        In order to prevail on an ineffective assistance of counsel claim, petitioner must satisfy

3    two separate requirements: first, he must establish that counsel's performance was deficient, i.e.,

4    that it fell below an "objective standard of reasonableness" under prevailing professional norms.

5    Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient

6    performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional

7    errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable

8    probability is a probability sufficient to undermine confidence in the outcome.  Id.

9        A defendant who enters a guilty plea on the advice of counsel generally may attack the

10    voluntary and intelligent character of the guilty plea only by showing that the advice he received

11    from counsel was not within the range of competence demanded of attorneys in criminal cases.[3]

12    See Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973);

13    United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988).  A defendant must satisfy the two-

14    part standard set forth in Strickland.  See Hill, 474 U.S. at 57-59; Iaea v. Sunn, 800 F.2d 861,

15    864-65 (9th Cir. 1986).  Where the alleged error is a failure to investigate or discover potentially

16    exculpatory evidence, the determination as to whether the error "prejudiced" the defendant will

17    depend on the likelihood that discovery of the evidence would have led counsel to change his

18    recommendation as to the plea.  This assessment will depend in large part on a prediction of

19    whether the evidence likely would have changed the outcome of the trial.

20        Relying upon Tollett, supra, Respondent maintains that because Petitioner pled nolo

21    contendere, he cannot raise a claim of ineffective assistance of counsel because the alleged

22    constitutional error arose prior to the plea.  Resp. Memorandum of Points and Authorities at 5.

23    Without deciding this question, the Court has considered Petitioner's claim of ineffective

24    assistance of counsel on the merits and concludes that Petitioner is not entitled to relief.

25        Petitioner states generally that trial counsel failed to "question the potential witness(es)

26

27    ───────────────

      [3] The decision whether or not to accept a plea offer is a critical state of the prosecution at

28    which the Sixth Amendment right to counsel attaches.  Iowa v. Tovar, 541 U.S. 77, 80-81
      (2004); Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002).

1  or victim's credibility" and trial counsel "failed to <u>subpoena other evidence(s)</u>." Petition at 16

2  (emphasis in original).  However, Petitioner does not offer any explanation or make any factual

3  showing as to why in the absence of these alleged failures counsel would have made a different

4  recommendation as to the plea.  Additionally, Petitioner does not specifically allege how

5  counsel's actions affected his decision.  As the state superior court found in denying Petitioner's

6  initial attempt to show that his counsel was ineffective, "Petitioner herein has failed to establish

7  a basis for relief.  Petitioner has failed to present any evidence aside from self serving statements

8  that he would not have pled."  Resp. Exh. 5 (<u>In Re Tondarlaird Curtis</u>, Santa Clara Superior

9  Court's Order, CC305988/CC312761, dated April 18, 2005) at 2.  Likewise, in the instant

10 proceeding Petitioner also fails to present any evidence of prejudice, aside from general

11 statements.

12        Because Petitioner has failed to show that but for his counsel's actions the result of the

13 proceeding would have been different, the state court's determination was not contrary to, or an

14 unreasonable application of, clearly established Supreme Court precedent, nor was it based on an

15 unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

16 2254(d)(1), (2).

17              2.    <u>Deprivation of Good Time Custody Credits</u>

18        Petitioner alleges two errors regarding the calculation of his sentencing credits.  First, he

19 claims that the trial court failed to calculate his good time credits.  Second, petitioner contends

20 that it was inappropriate for him to receive an accrual rate of fifteen percent good time credit.

21 Petition at 24-26.

22        If a state prisoner's time credits have been improperly computed, he may have a claim for

23 denial of due process.  <u>See</u> <u>Haygood v. Younger</u>, 769 F.2d 1350, 1355-58 (9th Cir. 1985) (en

24 banc), <u>cert. denied</u>, 478 U.S. 1020 (1986).  Any deprivation of time credits allegedly impacting a

25 prisoner's sentence generally may be remedied only by way of habeas corpus.  <u>See</u> <u>Young v.</u>

26 <u>Kenny</u>, 907 F.2d 874, 876-78 (9th Cir. 1989), <u>cert. denied</u>, 498 U.S. 1126 (1991); <u>Toussaint v.</u>

27 <u>McCarthy</u>, 801 F.2d 1080, 1096 n.14 (9th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1069 (1987).

28        Petitioner contends that he did not waive his good conduct credits.  Petition at 28.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Curtis444den          6

1   However, according to the underlying record, during Petitioner's plea colloquy on August 25,

2   2003, the prosecutor clearly stated that "[Petitioner] would waive ninety actual days [of pre-

3   sentence custody] and whatever good times attendant to that . . . ." Resp. Exh. 1 (Reporter's

4   Transcript dated August 25, 2003) at 3. Petitioner then stated that he understood the terms of the

5   plea and agreed to them. Id. at 4.

6       Petitioner next alleges that it was inappropriate for him to receive an accrual rate of

7   fifteen percent and for the trial court to "not honor his full amount of credit(s) that he served in

8   the county jail." Petition at 24. However, the accrual rate of fifteen percent good time credit

9   was proper given his plea of nolo contendere to lewd or lascivious acts on a child under fourteen,

10   a violation of California Penal Code section 288(a). The Santa Clara Superior Court held that

11   "Petitioner's credits were properly limited pursuant to [California] Penal Code § 2933.1 due to

12   the nature of his crimes." Resp. Exh. 4 (In Re Tondarlaird Curtis, Santa Clara Superior Court's

13   Order, CC312761/CC305988, dated October 6, 2004) at 1. Under California Penal Code section

14   2933.1(a), "[n]otwithstanding any other law, any person who is convicted of a felony offense

15   listed in subdivision (c) of Section 667.5 shall accrue no more than fifteen percent of worktime

16   credit." Penal Code section 288(a), lewd and lascivious acts on a child under fourteen, is defined

17   in section 667.5(c)(6) as a violent felony.

18       Based upon its review of the underlying record, the Court concludes that the state court's

19   determination was not contrary to, or an unreasonable application of, clearly established

20   Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

21   of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

22                   **III. CONCLUSION**

23       The Court concludes that Petitioner has failed to show any violation of his federal

24   constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for a

25   writ of habeas corpus is denied. The Clerk shall enter judgment and close the file.

26       IT IS SO ORDERED.

27   DATED: 3/29/07

28                           JEREMY FOGEL
                               United States District Judge

1    A copy of this ruling was mailed to the following:

2

3    Tondarlaird Curtis
     70 North Jackson Avenue, Apt. #9
4    San Jose, CA  95116

5

     Ross C. Moody
6    California State Attorney General's Office
     455 Golden Gate Ave, Suite 11000
7    San Francisco, CA  94102-7004

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Curtis444den                    8